FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

2014 NOV 20 P 3: 37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

THOMAS PORTER )
)
and )
)
ANTHONY JUNIPER )
)
and )
)
IVAN TELEGUZ ) C.A. #1:14-cv-1588
) LMB/IDD
and )
)
MARK LAWLOR )
)
and )
)
RICKY GRAY )
)
    Plaintiffs, )
)
v. )
)
HAROLD C. CLARKE )
)
and )
)
KEITH W. DAVIS, )
)
    Defendants. )

## COMPLAINT

### Preliminary and Jurisdictional Statement

1. In this lawsuit for declaratory and injunctive relief, five Virginia Death Row prisoners seek relief from a mandatory regimen of spending almost 24 hours per day in their small cells, 365 days a year, and having almost no contact with other human beings. Their claims arise

under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. This court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) and (4).

## Parties

2. Plaintiffs Thomas Porter, Anthony Juniper, Ivan Teleguz, Mark Lawlor, and Ricky Gray are residents of Virginia's Death Row located in Sussex I State Prison in Waverley, Virginia. Each awaits his execution in the event pending post-conviction initiatives do not succeed in avoiding that result. They have spent, respectively, the following time on Death Row: Thomas Porter: over seven years; Anthony Juniper: over nine years; Ivan Teleguz: over eight years; Mark Lawlor: over three years; and Ricky Gray: over eight years.

3. Defendant Harold C. Clarke is the Director of the Virginia Department of Corrections ("VDOC"). He provides final approval of rules applicable to Death Row inmates. He is sued in his official capacity for declaratory and injunctive relief.

4. Defendant Keith W. Davis is the warden of Sussex I State Prison in Waverley. He is in charge of implementing rules and procedures for Death Row unit. He is sued in his official capacity for declaratory and injunctive relief.

## Claim for Relief

5. Death Row is composed of a 44-cell pod containing eight death row prisoners, including the plaintiffs, and 36 empty cells. None of the prisoners' cells is adjacent to that of another.

6. With the exception of one prisoner, Alfredo Prieto, all other Death Row prisoners are governed, by administrative fiat, by the protocol described by this court in *Prieto v. Clarke, et al.*, No. 1:12cv1199; 2013 WL 6019215 (E. D. Va. Nov. 12, 2013), a copy of which is appended to this complaint and the findings of which are incorporated here by reference. Some of those findings include:

    A.    "On average, [plaintiffs] must remain in [their] single cell for all but one hour of the day" . . . the "cell measures 71 square feet and features only a narrow, mesh covered window for natural light. It is otherwise illuminated by a main light mounted on the wall. In the evening hours, when the main light is turned off, a nightlight remains on in plaintiffs['] cell[s], as do the pod lights immediately outside of it, ensuring that [their] cell is never completely dark." *Id.* at 1.

    B.    "[Each p]laintiff is allowed to leave his cell for just one hour of outdoor recreation approximately five days per week. During that time, however, he is limited to a similarly-sized outdoor cell with a concrete floor and no exercise equipment. [Each p]laintiff is not allowed to use the gymnasium or prison yard, nor is he given an opportunity for in-pod recreation. [Each p]laintiff may leave his cell for a ten-minute shower three days per week. [Each plaintiff] may also purchase a television set and compact disc player for use in his cell as well as request delivery of certain books from the law library." *Id.*

    C.    "Perhaps the most significant restrictions are those depriving plaintiff[s] of human contact. [Each plaintiff] must spend almost all of his time alone. Although death row houses [eight inmates], they are separated by at least two (and often many

more) empty cells within the 44-unit pod." *Id.* "Solid doors with no openings apart from small slits substantially impede any communication among death row inmates. . . [each] plaintiff takes all three meals in his cell." *Id.* " . . . [Each plaintiff is not allowed to join general population inmates for vocational, educational, or behavorial programming, nor is he allowed to attend group religious services." *Id.*

D. "Visitation opportunities are limited to non-contact visits from immediate family members on weekends in a room with a glass partition." *Id.*

E. "Capital offenders . . . receive no . . . initial security classification. Instead, based on sentence alone, they are automatically placed in restrictive conditions on death row. . .[and] their placement is permanent." *Id.* at 2.

7. Mr. Porter is allowed out of his cell for approximately one hour each week to perform cleaning duties as a trustee. Mr. Gray is occasionally allowed out of his cell for very brief periods of time to cut the hair of other Death Row inmates. In all regards, their lives go along the same lines as those of the other plaintiffs, described by this court in *Prieto*.

8. In 2012, prisoner Alfredo Prieto then on Death Row since September 2010, filed suit in this court against the defendants in the instant suit, claiming that the above-described conditions of life on Death Row were unconstitutional. He prevailed on his due process claim, the court, per Brinkema, J., handing down the above referenced opinion in his favor.

9. Since prevailing in his case, and notwithstanding that the defendants have taken an appeal from this court's decision in his case, Mr. Prieto has been granted new privileges, including exercise privileges in the gymnasium and contact visits with his immediate family.

-4-

10. Defendants have been asked to extend the relief provided to Mr. Prieto to the plaintiffs, but have refused to do so.

11. Defendants' refusal to extend to plaintiffs the relief granted Mr. Prieto is not based on any individualized consideration of their circumstances, but on the same administrative fiat as governed Mr. Prieto until this court intervened.

12. Defendants have appealed this court's grant of relief in *Prieto*, but have not obtained a stay of this court's declaratory and injunctive order.

13. Defendants' maintenance of plaintiffs in accordance with the unmitigated administrative segregation described above and in *Prieto* inflicts, and will continue to inflict, great mental suffering as well as physical distress upon the plaintiffs. It is unrelated to any legitimate penological goal, and constitutes a form of psychological torture that amounts to the gratuitous infliction of cruel and unusual punishment upon them.

## Causes of Action

### Count I: Denial of Due Process

14. Defendants continue to deny Death Row inmates other than Mr. Prieto, including the plaintiffs, due process of law in relation to their placement in segregated confinement, leading to the same due process offenses as were found unconstitutional in *Prieto*.

### Count II: Denial of Equal Protection

15. Plaintiffs are similarly situated in all material regards to Alfredo Prieto. They differ from him only in the fact that he brought and won a lawsuit challenging the conditions imposed

upon all Death Row inmates. Nevertheless, defendants have chosen to apply this court's *Prieto* mandate solely to Mr. Prieto. This decision violates the plaintiffs' right to equal protection of the law, as Mr. Prieto's legal success, while requiring defendants to grant him relief over their own objections, did not otherwise change Mr. Prieto, or his relationship to the prison where he resides, its personnel and its other inmates.

### Count III: Imposition of Cruel and Unusual Punishment

16. The permanent, unmitigated segregation of which plaintiffs complain here subjects them to an inhumane existence unrelated to any legitimate penological goal, amounting to the imposition of cruel and unusual punishment violating the Eighth Amendment.

### Relief Sought

Wherefore, plaintiffs request an order of this court

* Extending to plaintiffs the declaratory relief awarded Mr. Prieto,
* Enjoining defendants from failing to extend to the plaintiffs the rights and privileges afforded Mr. Prieto as a result of this court's order in his case,
* Awarding them reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and,
* Granting them such other relief as is just.

Respectfully submitted,

THOMAS PORTER, *et al.*,

By counsel

Dated: November 20, 2014

Counsel for Plaintiffs:

*signature*

Victor M. Glasberg, VSB #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com

PorterThomas\Drafts\Complaint(2014-1107)

Jeffrey E. Fogel, VSB #75643
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300
jeff.fogel@gmail.com

Steven D. Rosenfield, VSB #16539
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300
attyrosen@aol.com